UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ERIC S. KILGORE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FRANKLIN COUNTY, OHIO, LOCAL GOVERNMENT et al.,<br><br>　　　　Defendants. | Case No. 3:22-cv-01046<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:　　The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

　　　Pro se Plaintiff Eric S. Kilgore brings this civil action under 42 U.S.C. § 1983 to address issues related to an ex parte domestic violence protection order that his former wife, Defendant Jessica Isobel Jude, obtained against him in state court in Franklin County, Ohio. (Doc. Nos. 1, 4.) The Court has already dismissed Kilgore's claims against most of the defendants named in his amended complaint. (Doc. Nos. 38, 48.) The only remaining defendants are Franklin County Court of Common Pleas Judge James Brown, who has filed a motion to dismiss (Doc. No. 32) for lack of jurisdiction or, in the alternative, for failure to state a claim on which relief can be granted, and Jude, who has not appeared in the action.

　　　For the reasons that follow, the Magistrate Judge will recommend that the Court find it lacks jurisdiction over Kilgore's remaining claims against Brown and Jude, grant Brown's motion

to dismiss, and dismiss Kilgore's claims against Jude sua sponte under Federal Rule of Civil Procedure 12(b)(1).[1]

## I. Background

### A. Factual Background[2]

Kilgore alleges that, before his divorce from Jude in 2017, he resided with Jude and their minor son in Lexington, Kentucky. (Doc. No. 4.) When Kilgore and Jude divorced, they entered into a custody agreement. (*Id.*) The custody agreement, which granted Kilgore parenting time with his son, was approved in Kentucky state court. (*Id.* at PageID# 164.)

Kilgore alleges that Jude then moved to Columbus, Ohio, with their son and filed a petition for an ex parte "[c]ivil [p]rotection [o]rder" against him in the Franklin County, Ohio, Court of Common Pleas. (*Id.* at PageID# 162.) Brown held an ex parte hearing on Jude's petition and entered an order of protection that required Kilgore to "immediately turn over to [l]ocal [l]aw

---

[1] The motion to dismiss (Doc. No. 32) was filed by Brown and former defendants the Franklin County Court of Common Pleas and O'Shaughnessy. Because the Court of Common Please and O'Shaughnessy have been dismissed from the action, the Court need only address the motion as it relates to Brown.

[2] The facts in this section are drawn from Kilgore's amended complaint (Doc. No. 4) and his original complaint and accompanying exhibits (Doc. Nos. 1, 1-1). While an amended pleading typically "supersedes the pleading it modifies" such that "the original pleading no longer performs any function in the case . . . ." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. supp. July 2023), courts may consider an original pleading with the amended pleading in certain circumstances. *See, e.g.*, *Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-cv-00612, 2017 WL 1164583, at *1 (M.D. Tenn. Mar. 28, 2017) (construing pro se plaintiff's complaints together where plaintiff "likely did not understand that her Amended Complaint would supersede the original Complaint, and that therefore she needed to re-allege the facts entitling her [to] relief"); *Bailey v. Deutsche Bank Nat'l Tr. Co.*, No. 1:18-cv-0754, 2018 WL 6164337, at *1 (N.D. Ga. Oct. 29, 2018) (construing pro se plaintiffs' "second amended complaint in conjunction with the facts alleged in their original complaint" "in keeping with the liberal construction of pro se pleadings"); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Here, Kilgore references core factual allegations and the eleven exhibits attached to his original complaint in his amended pleading. Given Kilgore's pro se status and his stated intent to rely upon those documents, the Court will consider the pleadings together.

[e]nforcement" "all deadly weapons and concealed carry weapon license," among other provisions, before a hearing on Jude's petition. (Doc. No. 1-1, PageID# 75.) Kilgore states that he complied with the order and turned over his firearms and concealed carry permit to the Office of the Fayette County Sherriff in Lexington, Kentucky. (Doc. No. 1-1.) Kilgore also alleges that Jude had sought a similar ex parte protective order in Kentucky that was denied before she moved to Ohio. (Doc. No. 4.)

Kilgore alleges that the Franklin County court's rules require parties to "appear within ten days" from the entry of an ex parte order for an adversarial hearing, but that his hearing was continued for two months without notice to him. (Doc. No. 4, PageID# 162.) Kilgore—who by this time had moved to Nashville—learned of the continuance when he called the court to confirm the hearing date before renting a car to drive to Ohio. (Doc. No. 4.) The hearing before Brown ultimately was held on July 28, 2020. Kilgore alleges that Brown refused to admit evidence that Kilgore filed on the morning of the hearing and gave Kilgore an "ultimatum": either the hearing would be continued again or "[Kilgore] could sign a Consent Order [that would formalize the ex parte order of protection] and could be finished with this issue." (*Id.* at PageID# 162.)

Kilgore states that accommodating another continuance would have been difficult "after [Kilgore] had just taken off work, [and had driven] nearly four hours" to appear for the hearing. (*Id.*) Kilgore further states that "[he] did not care whatsoever to stay as far away from [his] ex-wife" but "[he] need[ed] [his] guns back" from the Fayette County Sherriff's Office. (*Id.*) Kilgore alleges that Brown "disguised" the fact that the consent order, if entered, would prevent Kilgore from reclaiming his firearms and permits. (*Id.* at PageID# 157.) Specifically, Kilgore alleges that Brown told him he would be able to get his guns and permits back if he left certain boxes on the form consent order unchecked. (Doc. No. 4.) Kilgore signed the consent order. (*Id.*) When he tried

to retrieve his guns and permits the next day, the Sheriff's Office would not return them and cited the consent order as the reason for refusing to do so. (*Id.*)

Kilgore states that he filed a motion to dismiss the proceedings before Brown for lack of subject matter jurisdiction on grounds that none of the events alleged in Jude's petition occurred in Ohio. (*Id.*) Kilgore states that his motion to dismiss was not heard because Jude evaded service by not providing the court with a current address. (*Id.*) Kilgore also states that the Franklin County court "force[s] litigants to physically file in person" and does not allow e-filing, which has "made it difficult, if not impossible, [for him] to be heard and represented" there. (*Id.* at PageID# 160.) Kilgore states that these filing rules caused his attorney to stop communicating with him and that he has not been able to find new counsel. (Doc. No. 4.)

Kilgore alleges generally that the order of protection Brown issued conflicted with the Kentucky custody order because it caused his parenting time to be suspended, that only a Kentucky court should have jurisdiction to make decisions that affect the custody order, and that the violation of his Second Amendment rights incurred by not having access to his weapons and permits has "decimated [his] life." (*Id.* at PageID# 157.)

**B.     Procedural History**

Kilgore initiated this action on December 21, 2022, by filing a pro se complaint against the Local Government of Franklin County, Ohio; the City of Columbus, Ohio; the Franklin County Court of Common Pleas; Brown; Jude; and O'Shaughnessy (Doc. Nos. 1, 1-1) and paying the Court's civil filing fee (Doc. No. 1-2).[3] Kilgore then filed an amended complaint that is the operative pleading. (Doc. No. 4.) In the amended complaint, Kilgore asserts § 1983 claims alleging

---

[3]     Kilgore lived in Tennessee when he initiated this action. (Doc. No. 1.) On March 13, 2023, Kilgore filed a notice of change of address in which he notified the Court that he now resides in West Virginia. (Doc. No. 19.)

that the defendants violated his Second Amendment rights when he was ordered to turn over his firearms to the Fayette County Sherriff's Office. (*Id.*) Kilgore also alleges that he suffered cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights because the consent order caused him to lose the parenting time awarded by the Kentucky custody order, that Brown entered the consent order without subject-matter jurisdiction, and that the Ohio court unfairly requires litigants to make filings in person. (*Id.*) Kilgore asks the Court to order the dismissal of the Ohio litigation, find the consent order that Brown entered to be null and void, and order the immediate return of his firearms from the Fayette County Sheriff's Office. (*Id.*) Kilgore also asks the Court to order Brown to allow litigants to file electronically in all cases and to require Brown and Jude to issue apology letters. (*Id.*) Kilgore seeks monetary damages, including damages for "defamation of character" and "libel." (*Id.* at PageID# 170.)

The Clerk of Court issued summonses at Kilgore's request (Doc. No. 2), and Kilgore filed proof of service affidavits stating that he served each summons (Doc. Nos. 22–27).

Before any of the defendants appeared, Kilgore filed a motion asking the Court to dismiss all defendants except Brown and Jude, explaining that the other defendants were "unnecessary" to his claims. (Doc. No. 9, PageID# 187.) The City of Columbus appeared and filed a motion to dismiss Kilgore's claims against it under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or, in the alternative, under Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, or Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. No. 38.) The Court granted Kilgore's motion to voluntarily dismiss all defendants except Brown and Jude and granted the City of Columbus's motion to dismiss as unopposed. (Doc. No. 48.)

While Kilgore's voluntary dismissal motion was pending, Brown and the other county defendants—Franklin County, the Franklin County Court of Common Pleas, and O'Shaughnessy—moved to dismiss Kilgore's claims against them under Rule 12(b)(1) or, in the alternative, under Rules 12(b)(2) and 12(b)(6). (Doc. No. 32.) Brown argues that the Court lacks subject-matter jurisdiction over Kilgore's claims against him, that he is entitled to judicial immunity, and that he is not subject to the Court personal jurisdiction. (Doc. No. 33.) Kilgore filed a response in opposition (Doc. No. 43), and Brown and the other county defendants filed a reply (Doc. No. 44).

Jude has not appeared or responded to Kilgore's amended complaint. The docket shows that Kilgore did not request a summons for Jude. Instead, he requested and the Clerk of Court issued a summons to Thomas Sexton, the attorney that Kilgore states represented Jude in the proceedings before Brown. (Doc. Nos. 1, 2, 4.) The proof of service affidavit Kilgore filed regarding Jude states that Terri L. Kilgore left the summons with Sexton's "front office staff" on May 1, 2023. (Doc. No. 22, PageID# 228.)

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[4] U.S. Const. art. III, § 2,

---

[4] For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). In resolving factual attacks, "'the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts, and the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Gaetano*, 994 F.3d at 505).

Brown's *Rooker-Feldman* argument focuses on the allegations of Kilgore's amended complaint and is therefore best construed as a facial attack under Rule 12(b)(1). *See Reguli v. Guffee*, 371 F. App'x 590, 595 (6th Cir. 2010) (treating *Rooker-Feldman* argument as a facial attack on subject-matter jurisdiction).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Kilgore appears pro se, the Court construes his filings "'liberally'" and holds his amended complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.** **Analysis**

    **A.** **Brown's Motion to Dismiss**

Brown's primary argument for dismissal is that the *Rooker-Feldman* doctrine deprives the Court of subject-matter jurisdiction over Kilgore's claims against him and that dismissal is therefore warranted under Rule 12(b)(1). (Doc. No. 33.) In the alternative, Brown argues that dismissal is appropriate under Rule 12(b)(6) because he is entitled to judicial immunity or under Rule 12(b)(2) because the Court lacks personal jurisdiction over him. (*Id.*). Kilgore has not responded to Brown's *Rooker-Feldman* argument directly but argues that Brown acted without jurisdiction in considering Jude's petition and entering the consent order. (Doc. No. 43.)

The *Rooker-Feldman* doctrine "generally provides that lower federal courts may not engage in appellate review of state-court decisions." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018). The doctrine reflects Congress's choice to grant jurisdiction only to the Supreme Court of the United States, not the lower federal courts, to review state-court judgments. *Id.* (citing 28 U.S.C. § 1257). *Rooker-Feldman* is "a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 915 (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)). It "applies not only when a party

9

attempts to expressly appeal a state court decision to a lower federal court, but also whenever the issues raised in the federal action implicate the validity of the state court proceedings." *Gentry v. Tenn. Bd. of Judicial Conduct*, No. 3:17-cv-00020, 2017 WL 6462348, at *4 (M.D. Tenn. Sept. 26, 2017) (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2007)).

To determine whether *Rooker-Feldman* applies in a particular case, courts look to "the injury alleged in the plaintiff's federal complaint." *In re Isaacs*, 895 F.3d at 912. If the source of the plaintiff's injury is the state-court decision, then *Rooker-Feldman* prevents the district court from asserting jurisdiction. *Id.* If the injury stems from another source, "'then the plaintiff asserts an independent claim'" and *Rooker-Feldman* does not apply. *Id.* (quoting *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012)). "The source of the plaintiff's injury may . . . be determined by examining the request for relief." *Id.* For example, a request to vacate a state-court judgment "clearly identifies the state-court judgment as the source of [the plaintiff's] injury" and is therefore barred by *Rooker-Feldman*. *Id.* at 912–13.

That *Rooker-Feldman* is implicated by Kilgore's claims against Brown is readily apparent from the relief he seeks. Kilgore asks this Court to order the Franklin County Court of Common Pleas to "dismiss" Jude's case in that court, to find the consent order Brown entered to be "null and void[,]" and to award Kilgore monetary damages for the injury he suffered because of the consent order. (Doc. No. 4, PageID# 157–58.) Kilgore also directly identifies the state court judgment as the cause of his injuries: "But for [Brown's] granting of the ex parte [protection] order" and entry of the consent order, the "injury [of] losing his [Second, Eighth, and Fourteenth Amendment rights]" and parenting time under the Kentucky custody order "would not have occurred . . . ." (Doc. No. 4, PageID# 157.) More specifically, Kilgore alleges that Brown's orders led to his parental rights under the Kentucky custody order being "suspended," "caus[ing] an

10

Case 3:22-cv-01046    Document 49    Filed 01/08/24    Page 10 of 17 PageID #: 342

innocent child to lose his [f]ather." (Doc. No. 4, PageID# 158.) Kilgore also alleges that Brown's order requiring him to turn over his firearms and his concealed carry permit to the Fayette County Sheriff's Office forced him to "adapt to a completely different lifestyle . . ." (Doc. No. 4, PageID# 161.)

Because Kilgore identifies the Ohio court's decisions as the source of his injuries, his claims are barred by *Rooker-Feldman*.[5] *See In re Isaacs*, 895 F.3d at 912–13; *see also Arnold v. Slatery*, Case No. 3:18-cv-01350, 2019 WL 3851135, at *2 (M.D. Tenn. July 8, 2019), *report and recommendation adopted by* 2019 WL 3841731 (M.D. Tenn. Aug. 15, 2019). Therefore, the Court lacks subject-matter jurisdiction over Kilgore's claims. *See Gentry*, 2017 WL 6462348, at *4 (finding that *Rooker-Feldman* applies "whenever the issues raised in the federal action implicate the validity of the state court proceedings" (citing *McCormick*, 451 F.3d at 393)). The Court should grant Brown's motion to dismiss on that basis.

Even if *Rooker-Feldman* did not apply to bar Kilgore's claims, the doctrine of judicial immunity would require dismissal of Kilgore's claims against Brown under Rule 12(b)(6). "It is well[ ]established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions*." Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (quoting *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004)). "[T]he paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court." *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989) (citing *Forrester v. White*, 484 U.S. 219, 226 (1988)). The

---

[5] Kilgore also asks the Court to "order Defendant(s) to issue apology letters" to his son, his family members, the National Rifle Association, and anyone else of his choosing. (Doc. No. 4, PageID# 168.) Kilgore also asks that these apology letters be filed with the Kentucky court overseeing his custody case and that the defendants allow litigants in Franklin County court to be able to file electronically. (*Id.*) The Court is not aware of any authority, and Kilgore provides none, that would empower it to grant these requests.

immunity that shields a judge from liability while performing that paradigmatic judicial act can be pierced in only two circumstances: when a judge's "actions [are] not taken in the judge's judicial capacity" or when a judge's "actions, though judicial in nature, [are] taken in complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

Kilgore argues that Brown "operate[s] outside of [his] own judicial capacity without jurisdiction" because the Franklin County Court of Common Pleas "was established without consulting" Article III of the U.S. Constitution and without "petitioning [the] U.S. Congress to establish a court that has such free power to operate." (Doc. No. 43, PageID# 317.) But courts have routinely held that, based on principles of federalism and state sovereignty, state judicial power is not dependent upon Congressional authorization, and Article III does not curtail a state's judicial power. *See e.g., ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) (stating that "[w]e have recognized often that the constraints of Article III [of the Constitution] do not apply to state courts . . ."); *see also Printz v. United States*, 521 U.S. 898, 918 (1997) (holding that states retain a "residuary and inviolable sovereignty" and that the Constitution's text reflects a "prohibition . . . on any involuntary reduction or combination of a State's . . . Judicial Power Clause, Art. III, § 2"). State judicial systems operate independently from Article III and its provisions establishing the federal judiciary. *See Gregory v.* Ashcroft, 501 U.S. 452, 457 (1991) ("We begin with the axiom that, under our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause").

Kilgore next argues that Brown did not have authority to enter an order of protection against him because the conduct on which Jude based her petition occurred in Kentucky and, thus, that Brown should not be afforded immunity for that decision. (Doc. No. 4.) This is, at heart, a routine state-law challenge to the application of Ohio's long-arm statute, Ohio Revised Code

§ 2307.382, in domestic violence proceedings initiated in Ohio state courts. *See, e.g.*, *Peterson v. Butikofer*, 139 N.E.3d 519 (Ohio Ct. App. 10th Dist. 2019) (holding that the court had personal jurisdiction to issue an order of protection against out-of-state husband who made threats against in-state wife); *Burnett v. Burnett*, No. S-10-050, 2012 WL 2196336, *5 (Ohio Ct. App. 6th Cist. June 15, 2012) (applying Ohio long-arm statute to find that record did not support personal jurisdiction over out-of-state husband in order of protection proceedings). Further, even if Kilgore could show that the Ohio court improperly asserted personal jurisdiction over him, a "finding that a state judge patently and unambiguously lacks jurisdiction is not coextensive with a finding that the judge acted in the complete absence of all jurisdiction" for purposes of judicial immunity. *Goldberg v. Maloney*, 57 F. App'x 664, 666 (6th Cir. 2003); *see also Bradley v. Fisher*, 80 U.S. 335, 351–52 (1871) (finding "distinction . . . between excess of jurisdiction and the clear absence of all jurisdiction" and holding that, "where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case . . . .").

To the extent Kilgore argues that Brown wrongfully persuaded him to enter into the consent order—that Brown "disguised a Civil Protection Consent Order as not infringing on the [Second, Eighth, and Fourteenth Amendments]"—that assertion is insufficient to defeat judicial immunity. (Doc. No. 4, PageID# 157.) "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11; *see also Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (holding that "judicial immunity applies to [judicial] acts performed maliciously and

13
Case 3:22-cv-01046    Document 49    Filed 01/08/24    Page 13 of 17 PageID #: 345

corruptly as well as acts performed in bath faith or with malice"). Judicial immunity thus provides a secondary basis on which to dismiss Kilgore's claims against Brown.

Because Kilgore's claims against Brown should be dismissed under Rule 12(b)(1) and Rule 12(b)(6), the Court will not address Brown's argument that dismissal is also warranted under Rule 12(b)(2).

### B. Kilgore's Claims Against Jude

Jude has not appeared in this action or made any arguments to dismiss Kilgore's claims against her. However, the Court is required to address sua sponte any perceived jurisdictional defects in an action, including in claims against a particular defendant. *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005); *see also Am. Telecom Co. v. Republic of Leb.*, 501 F.3d 534, 537 (6th Cir. 2007) (holding that whether a court has subject-matter jurisdiction is a "threshold" question in any action). The Court therefore must also address whether Kilgore's claims against Jude are also barred by *Rooker-Feldman*. The Court should find that they are.

Kilgore requests the same relief for his claims against Jude as for his claims against Brown: that this Court order the Franklin County Court of Common Pleas to dismiss Jude's case in that court, find the consent order Brown entered to be "null and void[,]" and award Kilgore monetary damages for the injury he suffered because of the consent order. (Doc. No. 4, PageID# 157–58.) Just as with his claims against Brown, the Ohio court's orders are the source of the injuries he claims by Jude. (*Id.*) *Rooker-Feldman* thus applies equally to Kilgore's claims against Jude.

Kilgore's failure to effect proper service on Jude provides a separate basis for dismissal. Rule 4(e) addresses service of individuals located within a judicial district of the United States and provides several means of effecting proper service on individual defendants. Under Rule 4(e), Kilgore could have served Jude as provided for under Tennessee law (the state in which this Court

14
Case 3:22-cv-01046   Document 49   Filed 01/08/24   Page 14 of 17 PageID #: 346

is located) or Ohio law (the state in which service was attempted). Fed. R. Civ. P. 4(e)(1). Kilgore could also have served Jude as provided in by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2)(A)–(C).

At Kilgore's request, the Clerk of Court issued a summons to "Thomas Sexton, attorney for defendant" Jude. (Doc. No. 2, PageID# 152.) On May 9, 2023, Kilgore returned an executed copy of that summons accompanied by a proof of service affidavit stating that Kilgore attempted to serve the summons by leaving it with Sexton's front office staff. (*Id.*) But there is no indication that Sexton or anyone at his office is authorized to accept service on Jude's behalf. Although Kilgore states that Sexton previously represented Jude in the Ohio proceedings, the record does not show that Sexton still represents Jude or represents Jude in this matter. Even if Sexton has a current attorney-client relationship with Jude, "proof of an attorney-client relationship, even one in the action in question, is not sufficient to show that service through an attorney is proper." *Greer v. Swift*, No. 3:18-cv-0394, 2018 WL 6735153, at *2 (M.D. Tenn. Nov. 16, 2018). "Instead, the record must show that the attorney exercised authority beyond the attorney-client relationship, including the power to accept service." *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997). Because the record offers no such proof, Kilgore has not served Jude in compliance with Rule 4.

More than 300 days have passed since Kilgore initiated this action. Federal Rule of Civil Procedure 4(m) provides that, "[i]f a defendant is not served within 90 days after the complaint is

filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022) (first citing Fed. R. Civ. P. 4(m); and then citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). Otherwise, the language of Rule 4(m) mandates dismissal, either on motion or sua sponte. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d 217, 219 & n.3 (6th Cir. 1996).

In an order entered on April 13, 2023—more than 100 days after Kilgore initiated the action—the Court reminded Kilgore that he was responsible for effecting service of process under Rule 4. (Doc. No. 21.) The Court extended the deadline for service to May 15, 2023, referred Kilgore to the Court's materials for pro se litigants, and "warned [Kilgore] that failure to effect service of process by that date may result in a recommendation that his case be dismissed without prejudice." (*Id.* at PageID# 226.) More than eight months after that order, Kilgore still has not effected proper service on Jude. Accordingly, under Rule 4(m), the Court "must dismiss the action without prejudice against [Jude] or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Because the Court has already extended the service deadline once, and because many more months have passed since it did so, dismissal of Kilgore's claims against Jude without prejudice is now appropriate.

**IV.     Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Brown's motion to dismiss Kilgore's amended complaint (Doc. No. 32) be GRANTED IN PART and FOUND MOOT IN PART and that the Court DISMISS WITHOUT PREJUDICE Kilgore's remaining claims against Brown and Jude under Rule 12(b)(1) for lack of subject-matter jurisdiction.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 8th day of January, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge